```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CAROLYN MARZOCCHI,                              :
                                                :
                              Plaintiff,        :        MEMORANDUM
                                                :        & ORDER
              -against-                         :        13-CV-7097 (SMG)
                                                :
LONG ISLAND RAIL ROAD COMPANY,                  :
                                                :
                              Defendant.        :
------------------------------------------------------------------------x
```
GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

On July 29, 2011, plaintiff Carolyn Marzocchi, a locomotive engineer employed by defendant Long Island Rail Road Company ("LIRR"), was operating a train that struck a young adult male, Mason Xu, who was trespassing on the tracks at the Flushing Main Street station. Prior to impact, plaintiff observed Xu in the path of the train and immediately engaged the train's emergency brake, injuring her thumb in the process. Xu was severely injured but ultimately survived. Since the accident, plaintiff has reportedly suffered significant emotional distress and has been diagnosed with post-traumatic stress disorder ("PTSD").

Plaintiff commenced this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, seeking damages for her physical and emotional injuries.[1] Complaint ("Compl."), Docket Entry 1. Defendant now moves for partial summary judgment with respect to plaintiff's claims for (1) emotional injury under FELA, and (2) a violation of the Federal Safety Appliances Act ("SAA"), 49 U.S.C. § 20301 *et seq.* Notice of Motion, Docket Entry 20; Def. Mem. in Supp. at 1, Docket Entry 21. The parties have consented to jurisdiction before a

---

[1] On the same day, plaintiff filed a separate action in this Court against LIRR seeking damages for an unrelated slip and fall that allegedly occurred on March 12, 2013. *Marzocchi v. Long Island R.R. Co.*, No. 13-7098 (E.D.N.Y. filed Dec. 12, 2013). This memorandum does not address any issues in that case.

magistrate judge for all purposes. Docket Entry 35. For the reasons that follow, defendant's motion is granted.

**BACKGROUND**

The following facts are presented in the light most favorable to plaintiff.[2] On the day of the accident, plaintiff was operating LIRR Train 351 from the Great Neck station to New York Penn Station. Pl. Counter 56.1 ¶¶ 7-8; Pl. Aff. ¶¶ 8-9. The train left Great Neck around 5:35 p.m. and arrived at the Flushing Main Street station at approximately 6:00 p.m. Pl. Counter 56.1 ¶¶ 11, 28. As the train was pulling into the Flushing station, plaintiff first noticed "something red" underneath the platform and then observed "[a] young boy's head." Pl. Dep. dated Sept. 9, 2014 ("Pl. Dep.") 49:2-20, Alston Decl. Ex. A. Within seconds of seeing this person, plaintiff activated the emergency brake on the "master controller," which she described as "the part of the train that initiates the emergency brakes and also controls the movement of the train." Pl. Dep. 15:22-16:3; 59:15-60:4. However, plaintiff was unable to stop the train before striking the trespasser, who was later identified as Xu. Def. 56.1 ¶¶ 19, 22; Pl. 56.1 ¶¶ 19, 22. Although plaintiff perceived Xu to be a child of eight or nine, he was in fact twenty years old at the time of the accident. Pl. Aff. ¶ 32; Flynn Affirm. Ex. 7 at 4. Plaintiff later complained to LIRR of pain to her left thumb as a result of applying the emergency brake. LIRR Accident/Incident Investigation Report at 5-6, Flynn Affirm. Ex. 5.

According to witnesses, Xu was in a handball court adjacent to the westbound track of the Flushing Main Street station shortly before the accident. MTA Incident Report at 11-12,

---

[2] The facts set forth in the text are drawn from the following: Def. Mem. in Supp. ("Def. Mem."), Docket Entry 21; Alston Decl. in Supp. ("Alston Decl."), Docket Entry 26; Def. R. 56.1 Statement ("Def. 56.1"), Docket Entry 27; Pl. R. 56.1 Reply ("Pl. 56.1"), Docket Entry 30; Pl. Counter R. 56.1 ("Pl. Counter 56.1"), Docket Entry 29; Pl. Aff. in Opp. ("Pl. Aff."), Docket Entry 22; Flynn Affirm. in Opp. ("Flynn Affirm."), Docket Entry 25; Kalash Affirm. in Opp. ("Kalash Affirm."), Docket Entry 23; Pl. Mem. in Opp. ("Pl. Mem."), Docket Entry 24; and Def. Reply Mem. in Supp. ("Def. Reply Mem."), Docket Entry 28.

Flynn Affirm. Ex. 7. At some point, Xu went to fetch a handball by exiting the fenced-in court and climbing up an embankment separating the court from LIRR's westbound track. He then proceeded underneath the westbound platform to retrieve a second handball, at which time he was hit by the train that plaintiff was operating. MTA Incident Report at 12. Xu was in critical condition following the accident. MTA Incident Report at 22.

Photographs of the site were taken by officers of the Metropolitan Transit Authority ("MTA") Police Department on the day after the accident. MTA Incident Report at 14-20. From these photographs, it appears that there were two fences through which Xu must have proceeded in order to gain access to the right of way: first, the fence surrounding the handball court, and second, a fence past the handball court separating the embankment from the train tracks. The MTA Police Department incident report indicated that the fence around the handball court had a hole large enough for a person to climb through. MTA Incident Report at 13, 19-20. The report also indicated that a five- to six-foot section of the second fence had been cut and pulled back by the FDNY during Xu's rescue. MTA Incident Report at 13-14.

On August 3, 2011, plaintiff was treated for her thumb injury by Dr. Nicholas Halper, who diagnosed her with a sprained thumb. Halper Record, Flynn Affirm. Ex. 11. Plaintiff also sought medical attention for the mental distress she suffered as a result of the accident. Pl. Dep. 89:25-90:4. Plaintiff visited with a social worker, Lydia Rosa, to whom she complained of experiencing severe depression "like [she] was sinking in quicksand" and "crying all the time." Pl. Dep. 90:4, 91:22-92:2. She also treated with a Dr. Ingenito, a psychiatrist who prescribed her Sertraline and Trazodone. Pl. Dep. 90:18-19, 97:17-98:4. Plaintiff reported to Dr. Ingenito that she felt sad and overwhelmed and that she had difficulty sleeping. Pl. Dep. 97:21-98:4. After commencing this action, plaintiff was also evaluated by Dr. Glenn Kalash, who diagnosed her

with PTSD as a "direct result from her LIRR train accident of July 29, 2011." Dr. Kalash Psychiatric Evaluation of Plaintiff ("Kalash Evaluation") at 10, Kalash Affirm. Ex. 1.

## DISCUSSION

I. *Summary Judgment Standard*

Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted). The initial burden of establishing that there are no genuine issues of material fact falls on the moving party; if the movant meets that burden, the non-moving party must produce evidence of specific facts that raise a genuine issue for trial to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient; "[t]here must be more than a 'scintilla of evidence'" to defeat a summary judgment motion. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

II. *Liability Under FELA*

Damages for emotional distress may be recovered under FELA only under limited circumstances. The legal issue presented by defendants' motion concerns whether the facts of this case, viewed most favorably to plaintiff, fall within the limited circumstances under which FELA permits recovery of emotional distress damages.

A. FELA Standard of Negligence

Under FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. "A railroad may be liable under FELA for failure to provide a safe workplace 'when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees.'" *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994) (quoting *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84-85 (2d Cir. 1989)). Notably, to establish the employer's negligence, "the quantum of evidence that suffices in FELA cases is significantly lower than in ordinary torts cases." *Nelson v. Metro-North Commuter R.R.*, 235 F.3d 101, 106 (2d Cir. 2000). As a result, "an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law." *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir. 1996).

Plaintiff asserts that defendant's failure to maintain the fence adjacent to the train's right of way permitted Xu to trespass on the train tracks. Pl. Mem. at 9. Although the incident report does not indicate whether a hole in the fence existed prior to the one made by the FDNY, there must have been some vulnerability in the fence that allowed Xu to access the tracks. Moreover, on October 6, 2010—approximately ten months prior to the accident—a station inspection revealed that the fence had moderately deteriorated and may have been in need of replacement or repair. Oct. 6, 2010 Inspection at 1, 5, Flynn Affirm. Ex. 4. Not only did the condition of the fence not improve by the time of the next inspection on September 15, 2011—several weeks after the accident—but also the inspector noted that approximately two feet of the fence was missing. Sept. 15, 2011 Inspection at 5, Flynn Affirm Ex. 4. Thus, there is at least some

5

evidence to suggest that defendant failed to maintain this fence, and that this failure contributed to plaintiff's injuries by allowing Xu to trespass on the tracks. Accordingly, plaintiff has adduced sufficient evidence to create a genuine issue of material fact as to whether defendant was negligent and whether this negligence contributed to the accident on July 29, 2011.

B. Restrictions on Recovery for Emotional Distress Damages

To determine the scope of cognizable claims for emotional distress under FELA, the Supreme Court has adopted the "zone of danger" test, which "limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Conrail v. Gottshall*, 512 U.S. 532, 547-48 (1994). The Court explicitly declined to adopt the common law "relative bystander" test, concluding that it saw "no basis to extend recovery to bystanders outside the zone of danger." *Id.* at 557. In short, then,

> a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not. Railroad employees thus will be able to recover for injuries—physical and emotional—caused by the negligent conduct of their employers that threatens them imminently with physical impact.

*Id.* at 556. The Court concluded that "[t]his rule will further Congress' goal in enacting the statute of alleviating the physical dangers of railroading." *Id*. The Supreme Court later clarified that only a physical impact that results in some physical harm may give rise to a right to recover for physical or emotional injuries. *Nelson*, 235 F.3d at 110 (citing *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 432 (1997)).

Importantly, the zone of danger test limits recovery only for "stand-alone emotional distress claims," that is, claims for emotional injury that are "not provoked by any physical injury." Claims for emotional injuries that are "brought on by physical injury"—also referred to

6

as "parasitic"—are not subject to the zone of danger test, and are "traditionally compensable." *Norfolk v. Western Ry. Co. v. Ayers*, 538 U.S. 135, 147-48 (2003).

Plaintiff seems to argue that she is entitled to recover damages for emotional distress for two reasons. First, although not explicitly stated in her memorandum of law, plaintiff apparently contends that she is entitled to recover emotional distress damages because she was in the zone of danger when she was forced to engage the emergency brake on the day of the accident. Second, plaintiff argues that, because she sustained a physical injury to her thumb as a result of the accident on July 29, 2011, she is entitled to recover damages for any emotional distress she suffered as a result of that accident, regardless of whether the injury to her thumb was the cause of that distress.

1. *Zone of Danger*

Plaintiff argues that she was within the zone of danger when she realized the train she was operating was about to strike Xu and attempted to apply the master controller. In an affidavit submitted in opposition to the pending motion, plaintiff asserts that her supervisors and instructors at LIRR taught her that, when a train is moving as quickly as hers was and the emergency brake is applied, the train may derail, catch fire, or jolt violently. Pl. Aff. ¶ 36. Plaintiff also learned that, when a train strikes a person on the tracks, the person may be thrown into the air and through the cab window, striking the engineer. *Id.* According to plaintiff, she "knew once [she] put the train into emergency [she] risked de-railing . . . and injury to passengers or crewmembers" like herself, and that, as a result, she was "frightened for the little boy, [her] passengers, [her] crew, and [her]self." *Id.* ¶¶ 35, 37. Plaintiff claims that she could not sleep for weeks after the accident, and that she "woke up crying and soaking wet because of nightmares about the accident, and the boy and [her]self getting injured." *Id.* ¶ 43.

7

Although plaintiff may have raised a question of fact about whether she was within the zone of danger, she has presented no evidence that any fear for her own safety contributed to the emotional damages she claims to have sustained. During her deposition, when asked what in particular upset her about the accident, plaintiff testified: "I kept relating [Xu] to my brothers when we were younger. To me, I couldn't get it out of my mind. He was a young boy. I wanted to help him and save him." Pl. Dep. 99:2-9. Plaintiff also testified about repressed childhood memories that she remembered only after she "struck the small boy." Pl. Dep. 94:18-95:22. During another deposition taken in a separate case brought by Xu against LIRR and the City of New York, plaintiff stated that she did not return to work until October 2011 because she thought that she had killed Xu. Pl. Dep. dated Jan. 24, 2013 ("Pl. *Xu* Dep.") 230:16-19, Flynn Affirm. Ex. 16. Plaintiff does not point to any testimony in either deposition in which she claims to have suffered emotional distress as a result of fear for her own safety.

Likewise, and perhaps of even greater significance, the report submitted by plaintiff's expert psychiatrist, Dr. Glenn R. Kalash, makes no connection between plaintiff's claim of emotional distress and any fear she may have had for her own safety. Rather, Dr. Kalash's report describes how plaintiff saw the back of Xu's head before the accident, how, in plaintiff's mind, she "saw a young boy and saw [her]self as a child looking at [her] brothers," and how this image "brought back the memories" of traumatic events plaintiff experienced as a child. Kalash Affirm. Ex. 1 at 2-3. In explaining the basis for his opinion that plaintiff suffers from PTSD, Dr. Kalash states in his report as follows:

> Ms. Marzocchi described how, on July 29, 2011, . . . she struck—and for a time, believed she had killed—an individual who suddenly came onto the train track at the Flushing station. Subsequent to this initial traumatic incident, with the specific recall of seeing the back of the individual's head/hairline, she recollected childhood memories and . . . traumas . . . . What had remained dormant and apparently repressed for the extent of her adult years abruptly resurfaced with the

8

> occurrence of an unrelated and dissimilar traumatic incident of striking someone with a train . . . . She describes having flashbacks of hitting the "boy."

Kalash Affirm. at 11-12.

In sum, aside from her own affidavit, plaintiff has failed to present any evidence that she suffered emotional distress because she feared for her own safety. It is well-settled, though, that "a self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment." *United Magazine Co. v. Murdoch Magazines Distrib.*, 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005), *aff'd sub nom. United Magazine Co., Inc. v. Curtis Circulation Co.*, 279 Fed. App'x 14 (2d Cir.2008). Likewise, "a party cannot defeat summary judgment by submitting an affidavit that contradicts prior sworn deposition testimony." *Id.* When considered in the light of her prior deposition testimony and the report of her expert, plaintiff's affidavit is insufficient to raise a genuine issue of fact about whether she has sustained emotional distress damages because she feared for her own safety at the time of the accident.

The question that remains is whether, assuming plaintiff was within the zone of danger, she may as a result recover under FELA for emotional distress even if that distress was brought about by concern for a third party. While it appears that this precise question has not been addressed by the Second Circuit, the Sixth Circuit has answered it in the negative in a markedly similar case. *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 483-84 (6th Cir. 2005). In *Lukowski*, a conductor and an engineer alleged that they developed PTSD after a train they were operating collided with a truck, killing the truck's driver. *Id.* at 480. The conductor and engineer then sought damages from the defendant railroad for the emotional distress that resulted from their concern for the truck driver's safety. *Id.* at 481. The Sixth Circuit framed the question before it as "whether a plaintiff who is within the 'zone of danger' may recover damages under FELA for emotional distress suffered not as a result of fear for personal physical safety, but rather, as a

9

result of witnessing a third party's peril." *Id*. at 482. The Court went on to affirm the district court's dismissal of the plaintiffs' claims, holding that, "in order to recover damages for emotional distress under FELA, the plaintiff must demonstrate that his or her emotional injury results from a fear for his or her own physical safety." *Id.* at 483-84. In so holding, the Sixth Circuit relied upon "*Gottshall*'s explicit reference to 'emotional injury caused by fear of physical injury to himself,'" as well as "*Gottshall*'s reminder that the primary purpose of FELA is compensation for physical injuries and deaths caused by railroad work." *Id.*

The *Lukowski* Court also considered two other cases involving similar facts. In *Marschand v. Norfolk and Western Ry. Co.*, 876 F.Supp. 1528 (N.D. Ill. 1995), *aff'd* 81 F.3d 714 (7th Cir. 1996), an engineer developed PTSD after a train that he was operating hit a truck, killing three people. *Id.* at 1530. In his subsequent FELA claim against the employer railroad for negligent infliction of emotional distress, the engineer argued that, once he established that some of his emotional injuries arose from concern for his own safety, he could recover for all other emotional distress caused by the railroad's negligence. *Id.* at 1534-35. The Court disagreed, holding that a plaintiff not only must fear for his or her own safety in order to recover emotional distress damages under FELA, but also that the recovery is limited to those damages sustained by virtue of such fear. Stated differently, the Court held that even a FELA plaintiff within the zone of danger may not recover emotional distress damages arising from his or her concern for the safety of a third party. *Id.* at 1535-37. In a similar case with nearly identical facts, the Supreme Court of Kansas held that FELA damage awards "may include emotional distress resulting from concern or fear for the safety of another person *as long as plaintiff establishes that he or she suffered imminent apprehension of physical harm*." *Grube v. Union Pacific R.R. Co.*, 256 Kan. 519, 527, 886 P.2d 845, 851 (1994) (emphasis added). Thus,

although the courts differed on whether FELA permits recovery for emotional injuries sustained by witnessing harm to third parties, they nevertheless agreed that emotional distress caused by concern for one's own safety is an indispensable prerequisite to recovery. Here, as discussed above, plaintiff has failed to adduce evidence that her emotional distress was triggered by concern for her own safety sufficient to defeat summary judgment.

    2.   *Physical Injury*

Plaintiff argues in the alternative that she may recover damages for emotional distress because she sustained an injury to her thumb. Pl. Mem. at 9. Plaintiff concedes that her thumb injury did not cause her emotional distress, but argues that her thumb injury nevertheless entitles her to recover emotional distress damages. Pl. Mem. at 12-13. Essentially, plaintiff contends that, because she sustained a physical injury as a result of defendant's negligence, all harm she suffered as a result of the same negligent conduct is compensable, even if the harm—her PTSD— and her physical injury are otherwise unrelated.

Plaintiff relies upon *Norfolk v. Western Ry. Co. v. Ayers*, 538 U.S. 135 (2003), for the proposition that, "once found liable for 'any bodily harm,' a negligent actor is answerable in damages for emotional disturbance 'resulting from the bodily harm *or from the conduct which causes it.*'" *Id.* at 154 (emphasis in original) (quoting Restatement (Second) of Torts § 456(a) (1963-1964)). A close reading of the *Ayers* decision, though, demonstrates that it fails to support plaintiff's position.

*Ayers* involved railroad workers who contracted asbestosis after allegedly being exposed to asbestos by the defendant railroad, and who sought emotional distress damages under FELA for their resulting fear of developing cancer. *Id.* at 140-42. Thus, the emotional distress suffered by plaintiffs in *Ayers* was directly tied to the physical injuries they sustained. In finding the railroad subject to liability for plaintiffs' emotional distress, the Court determined that the

11

distress damages sought were "associated with, or 'parasitic' on," plaintiffs' physical injuries. *Id.* at 148. The Supreme Court thus described its holding as "affirm[ing] only the qualification of an asbestosis sufferer to seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages." *Id.* at 158. Clearly, then, *Ayers* does not hold that a plaintiff who sustains a physical injury in an accident may recover for any emotional damages caused by the same accident without regard to whether those emotional damages are connected to the physical injury sustained.

Accordingly, plaintiff's emotional distress claim is properly characterized not as one connected to her thumb injury, but as a stand-alone claim "for which recovery is sharply circumscribed by the zone-of-danger test." *Id.* at 147. Not only has plaintiff failed to identify any case law other than *Ayers* in support of her threshold recovery theory, but the Supreme Court's reasoning in *Gottshall* undermines her argument. In *Gottshall*, the Court considered the common law "physical impact test," which permits recovery for emotional injuries stemming from a negligent act if the plaintiff "contemporaneously sustained a physical impact (no matter how slight) or injury due to the defendant's conduct." 512 U.S. at 547. The Court declined to adopt this test out of a concern that an employee's recovery for emotional harm could turn on whether he or she fortuitously sustained some superficial physical injury; the Court saw "no reason . . . to allow an employer to escape liability for emotional injury caused by the apprehension of a physical impact simply because of the fortuity that the impact did not occur." *Id.* at 556. By the same token, there is no compelling reason why the fortuity of a minor, incidental physical injury should be sufficient to support a claim for emotional distress damages that could not be asserted by a similarly situated plaintiff who escaped the underlying event without harm.

12

For all these reasons, plaintiff may not recover for emotional distress absent some showing of a causal connection between her distress and either her physical injury or her concern for her own safety. Because she has failed to raise a genuine issue of material fact in either regard, summary judgment for defendant on plaintiff's emotional distress claim is warranted.

III.   *Liability Under the SAA*

Defendant also moves for summary judgment on plaintiff's claim that defendant violated the Federal Safety Appliances Act ("SAA"). Railroads have an "absolute duty to comply with the [SAA]." *Myers v. Reading Co.*, 331 U.S. 477, 485 (1947). As is relevant here, the SAA provides that locomotives used by railroad carriers must be "equipped with a power-driving brake and appliances for operating the train-brake system." 49 U.S.C. § 20302(a)(4).

Plaintiff does not indicate in her complaint which subsection of the SAA she alleges that defendant violated. Compl. ¶ 13. In her opposition to defendant's motion, though, plaintiff cites 49 U.S.C. § 20302(a)(4) and alleges that the master controller "was not in proper condition and safe to operate at the time of the emergency." Pl. Mem. at 5-6. Plaintiff further claims that she "had to use both hand[s] and unusually hard effort to move the master controller," thus resulting in her thumb injury. Pl. Mem. at 6. Defendant contends that plaintiff's testimony and her conduct on the day of the accident indicate that the brake equipment was functioning properly. Def. Mem. at 13.

Plaintiff provided statements about the accident to LIRR, the MTA Police and the LIRR General Counsel. Although she described making an emergency stop in each of her statements, she made no reference to the master controller malfunctioning in any of them. LIRR Accident Report, Flynn Affirm. Ex. 5 at 10; MTA Incident Report at 11; Statement to LIRR General Counsel, Alston Decl. Ex. C. In her deposition in this case, plaintiff stated that, generally, only a

13

"simple push" was required to place the master controller into a different braking position. Pl. Dep. 58:20-59:6. Moreover, with the exception of her own self-serving affidavit, plaintiff fails to point to any evidence indicating that she had to use unusual force to apply the emergency brake on the master controller at the time of the accident. Pl. Counter 56.1 ¶¶ 35-37 (citing only plaintiff's affidavit); Pl. Aff. ¶ 34. In her deposition, plaintiff stated that she did not experience any operational equipment problems once the train left Great Neck on its way to Penn Station. Pl. Dep. ¶ 28:21-24. In addition, she explained that the emergency brake was tested during pre-trip inspections conducted before both legs of the trip, yet did not once mention any problems arising from these tests. Pl. Dep. 22:18-23:13, 25:17-26:5. Notably, plaintiff explicitly referenced moving the master controller during these inspections. Pl. Dep. 23:6-8. She also stated that, prior to the incident at the Flushing Main Street station, she "did not have any difficulty moving the master controller on that day." Pl. Dep. 59:7-14. During her deposition in the *Xu* case, plaintiff likewise made no mention of any problem with the operation of the master controller. When asked to describe how she injured her thumb, plaintiff explained that she jammed her thumb while engaging the emergency brake, and that it "got caught underneath the throttle or hit something. I don't recall, it just get [sic] injured." Pl. *Xu* Dep. 179:25-180:12, 186:23-187:4. When asked whether there was "any reason why [she] had to put two hands on the throttle to put it into emergency," plaintiff testified that "it wasn't had to . . . an engineer uses both hands. I don't know, I can't answer that question. I sometimes do two hands." Pl. *Xu* Dep. 180:25-181:7. Finally, plaintiff stated during that deposition, as she did in her testimony in this case, that tests performed on the day of the accident revealed that the brakes were in good working order. Pl. *Xu* Dep. 225:15-22, 246:11-247:25.

In short, plaintiff was questioned during both depositions about the master controller, yet identified no flaw in its operation. Plaintiff may not now create an issue of fact by making claims wholly inconsistent with her own prior testimony. Accordingly, plaintiff has failed to raise a genuine issue of material fact as to whether defendant violated the SAA, and defendant is entitled to summary judgment on this claim as well.

## CONCLUSION

For the reasons stated above, defendants' motion for partial summary judgment is granted in its entirety, and plaintiff's claims under the Federal Employers' Liability Act for emotional distress damages and under the Federal Safety Appliances Act for malfunctioning brakes are dismissed.

SO ORDERED.

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
July 12, 2016

U:\MF 2015-2016\Marzocchi v. LIRR\Marzocchi v. LIRR Partial SJ FINAL.docx